*ITHR*

**RECEIVED**

JAN 31 2008 *aw*
*JAN 31 2008*
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

United States of America ex rel.                    )
                                                     )
**AHMAD SIMMS**  *K-52489*                           )
(Full name and prison number)                        )
(Include name under which convicted)                 )
                                                     )
PETITIONER                                       )    CASE
                                                     )    NO: _____
                                                          (Supplied by Clerk of this Court)
          vs.                                        )
                                                     )
**DONALD HULICK**                                    )
(Warden, Superintendent, or authorized               )    08CV687
person having custody of petitioner)                 )    JUDGE DARRAH
                                                     )    MAGISTRATE JUDGE KEYS
RESPONDENT, and                                      )
                                                     )  – – – – – – – – – – – –
**(Fill in the following blank only if judgment**    )
**attacked imposes a sentence to commence**          )
**in the future)**                                   )
                                                     )
ATTORNEY GENERAL OF THE STATE OF                     )    Case Number of State Court Conviction:
                                                     )
_____                      )    *00 CR 113702*
(State where judgment entered)                       )

**PETITION FOR WRIT OF HABEAS CORPUS – PERSON IN STATE CUSTODY**

1.  Name and location of court where conviction entered: **COOK COUNTY CRIMINAL COURT 2650 S.**

    **CALIFORNIA AVE. CHICAGO, IL. 60608**

2.  Date of judgment of conviction: **10-31-02  OCTOBER 31 2002**

3.  Offense(s) of which petitioner was convicted (list all counts with indictment numbers, if known)
    **FIRST DEGREE MURDER, HOME INVASION AND ARMED ROBBERY.**

4.  Sentence(s) imposed: **45 yrs., 15 yrs., 15 yrs. CONSECUTIVE (CONCURRENT)**

5.  What was your plea? (Check one)    (A) Not guilty    ( **X** )
                                       (B) Guilty        (   )
                                       (C) Nolo contendere (   )

    If you pleaded guilty to one count or indictment and not guilty to another count or indictment, give details:
                                       **N/A**

Revised: 7/20/05

## PART I – TRIAL AND DIRECT REVIEW

1. Kind of trial:  (Check one):        Jury  ( **X** )           Judge only  (   )

2. Did you testify at trial?         YES  (   )           NO        ( **X** )

3. Did you appeal from the conviction or the sentence imposed?  YES ( **X** )   NO (   )

   (A)  If you appealed, give the

       (1)  Name of court:      **THE ILLINOIS APPELLATE COURT 1st. DIST.**

       (2)  Result:         **AFFIRMED**

       (3)  Date of ruling:     **JULY 19, 2004**

       (4)  Issues raised:      **CONFRONTATION CLAUSE, SENTENCE RAISED MITTIMUS.**

   (B)  If you did not appeal, explain briefly why not:

       **N/A**

4. Did you appeal, or seek leave to appeal, to the highest state court?  YES ( **X** )        NO (   )

   (A)  If yes, give the

       (1)  Result:         **DENIED**

       (2)  Date of ruling:     **02-03-05**

       (3)  Issues raised:      **CONFRONTATION CLAUSE, SENTENCE ISSUE MITTIMUS.**

   (B)  If no, why not:      **N/A**

5. Did you petition the United States Supreme Court for a writ of *certiorari*?  Yes (   )  No ( **X** )

   If yes, give (A) date of petition: _____  (B) date *certiorari* was denied: _____

Revised:  7/20/05

## PART II – COLLATERAL PROCEEDINGS

1. With respect to this conviction or sentence, have you filed a post-conviction petition in state court?

   YES (**x**)   NO ( )

   With respect to *each* post-conviction petition give the following information (use additional sheets if necessary):

   A. Name of court: <u>COOK COUNTY CRIM. CT. CHICAGO, ILLINOIS 60608</u>

   B. Date of filing: <u>JULY 08, 2005</u>

   C. Issues raised: <u>INEFF. ASSIST. APP. COUNSEL, AMENDED INDICTMENT ( ACCOUNTABILITY ), INEFFECTIVE OF TRIAL COUNSEL, INEFF. APP. COUNSEL NOT RAISING INEFF. OF TRIAL ATTY.</u>

   D. Did you receive an evidentiary hearing on your petition?   YES ( )   NO (**X**)

   E. What was the court's ruling?   <u>SUMMARY DISMISSAL</u>

   F. Date of court's ruling:   <u>AUGUST 25, 2005</u>

   G. Did you appeal from the ruling on your petition?   YES (**X**)   NO ( )

   H. (a)   If yes, (1) what was the result?   <u>AFFIRMED</u>

           (2) date of decision:   <u>01-19-07</u>

     (b)   If no, explain briefly why not: <u>N/A</u>

   I. Did you appeal, or seek leave to appeal this decision to the highest state court?

   YES (**X**)   NO ( )

     (a)   If yes, (1) what was the result?   <u>DENIED</u>

           (2) date of decision:   <u>05-31-07</u>

     (b)   If no, explain briefly why not: <u>N/A</u>

Revised: 7/20/05

2. With respect to this conviction or sentence, have you filed a petition in a **state court** using any other form of post-conviction procedure, such as *coram nobis* or habeas corpus?     YES ( )          NO (X)

    A. If yes, give the following information with respect to each proceeding (use separate sheets if necessary):

        1.    Nature of proceeding      _____

        2.    Date petition filed      _____

        3.    Ruling on the petition      _____

        4.    Date of ruling      _____

        5.    If you appealed, what was      **N/A**
              the ruling on appeal?      _____

        6.    Date of ruling on appeal      _____

        7.    If there was a further appeal,
              what was the ruling ?      _____

        8.    Date of ruling on appeal      _____

3. With respect to this conviction or sentence, have you filed a previous petition for habeas corpus in **federal court**?     YES ( )     NO (X)

    A. If yes, give name of court, case title and case number: _____

                                    **N/A**

    B. Did the court rule on your petition? If so, state

        (1) Ruling:    _____

        (2)   Date:    _____      **N/A**

4. With respect to this conviction or sentence, are there legal proceedings pending in any court, other than this petition?     YES ( )          NO (X)

    If yes, explain: _____
                                      **N/A**

Revised: 7/20/05

## PART III – PETITIONER'S CLAIMS

1.    State briefly every ground on which you claim that you are being held unlawfully.  Summarize briefly the facts
supporting each ground.  You may attach additional pages stating additional grounds and supporting facts.  If you
fail to set forth all grounds in this petition, you may be barred from presenting additional grounds later.

**BEFORE PROCEEDING IN THE FEDERAL COURT, YOU MUST ORDINARILY FIRST EXHAUST
YOUR STATE COURT REMEDIES WITH RESPECT TO EACH GROUND FOR RELIEF ASSERTED.**

(A)    Ground one    SIXTH AMENDMENT INEFFECTIVE APPELLATE COUNSEL VIOLATION.
   Supporting facts (tell your story briefly without citing cases or law):

Appellate counsel was ineffective for failing to raise on direct review the fact

that petitioner was intentionally subjected to police initiated interrogation while

knowingly and strategically failing to issue miranda warnings as a means of compelling

petitioner to subsequently give a video taped confession under guise of it being

voluntary.

SEE ATTACHED ARGUMENT.


(B)    Ground two    FIFTH AMENDMENT VIOLATION OF THE U.S. AND ILLINOIS CONSTITUTION (1970).
   Supporting facts:

The State unlawfully amended indictment against petitioner when it argued and

instructed the jury on the seperate and uncharged offense of accountability which

require distinct elements to be proven than that which was charged.


SEE ATTACHED ARGUMENT.

Revised: 7/20/05

(C)  Ground three ___**SIXTH AMENDMENT VIOLATION OF TRIAL COUNSEL U.S. AND ILLINOIS CONST.**___
Supporting facts:

**Trial counsel was ineffective for failing to present a defense even in his**

**closing argument relative to the State's act of amending/broadening the**

**indictment prior to closing argument.**

**SEE ATTACHED ARGUMENT.**

(D)  Ground four ___**SIXTH AMENDMENT INEFFECTIVE APPELLATE COUNSEL VIOLATION.**___
Supporting facts:

**This argument is reinterated.**

**SEE ATTACHED ARGUMENT.**

2.  Have all grounds raised in this petition been presented to the highest court having jurisdiction?

YES ( X )   NO ( )

3.  If you answered "NO" to question (2), state briefly what grounds were not so presented and why not:

**N/A**

Revised: 7/20/05

GROUND FIVE:   SIXTH AMENDMENT AND FOURTEENTH AMENDMENT DUE PROCESS OF LAW
Trial court prohibits the jury from considering petitioner's defense to the
newly interjected theory by instructing jury to disregard said evidence.

SEE ATTACHED ARGUMENT.


GROUND SIX:   FOURTH AND FIFTH AMENDMENTS VIOLATIONS OF THE U.S. AND ILLINOIS CONST.
Petitioner was not taken to the nearest and most accessible judge without
unnecessary delay to determine probable cause.

SEE ATTACHED ARGUMENT.


GROUND SEVEN:   SIXTH AMENDMENT RIGHT TO CONFRONTATION CLAUSE U.S. CONSTITUTION
Petitioner was denied his right to confrontation where the court precluded
defense counsel from cross-examining Raymond Orange about his motive to testify
falsely.

SEE ATTACHED ARGUMENT.

7.

## PART IV – REPRESENTATION

Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(A)  At preliminary hearing *Patrick Makeigue*

(B)  At arraignment and plea *Patrick Makeigue*

(C)  At trial *Patrick Makeigue*

(D)  At sentencing *Patrick Makeigue / Appeal*

(E)  On appeal  Mr. Andrew Harger 203 n. Lasalle st. Chicago, Il. (Mr. Michael Bennett)

(F)  In any post-conviction proceeding  *Pro-se*

(G)  Other (state):  N/A

## PART V – FUTURE SENTENCE

Do you have any future sentence to serve following the sentence imposed by this conviction?

YES ( )   NO (X)

Name and location of the court which imposed the sentence:  N/A

Date and length of sentence to be served in the future  N/A

WHEREFORE, petitioner prays that the court grant petitioner all relief to which he may be entitled in this proceeding.

Signed on: _____

(Date)                        Signature of attorney (if any)

**I declare under penalty of perjury that the foregoing is true and correct.**

BY: _____
(Signature of petitioner)

K-52489
(I.D. Number)

Box 711 MENArd, IL. 62259
(Address)

8.

Revised: 7/20/05

ATTACHMENT

ARGUMENTS.

I.

**APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE ON DIRECT APPEAL THE FACT THAT PETITIONER WAS INTENTIONALLY SUBJECTED TO POLICE INITIATED INTERROGATION WHILE KNOWINGLY AND STRATEGICALLY FAILING TO ISSUE MIRANDA WARNINGS AS A MEANS OF COMPELLING PETITIONER TO SUBSEQUENTLY GIVE A VIDEO-TAPED CONFESSION UNDER THE GUISE OF IT BEING VOLUNTARY.**

This petitioner was arrested at 5:30 a.m. at the apartment of his aunt on the date of December 2, 1999. (R. H. 62) This petitioner was transported to the Area (2) Police Facility, and after arriving at around 7:00a.m., this petitioner was questioned until 10:00a.m., at which time he was given an opportunity to hand-write a statement which purports to admit that this petitioner was involved in the criminal offense of first degree murder. (R. H. 76) That after this statement was elicited, this petitioner was then placed before a video-camera at 11:00a.m., to confess to what was written in the alleged statement that had been previously written. (R. L. 68) And while on film, it was then that the police advised this petitioner of his Miranda rights, as a means of ensuring an independant showing that this petitioner's rights were observed. Illinois has adopted the use of "video-taping" confessions as a means of demonstrating that there exist an inde-pendant and corroborating showing that a defendnant was given his Miranda rights without threats, or coercion. The intended purpose of this tool was to film the entire interrogation process, however, Illinois Law Enforce-ment Officials have created means of circumventing Miranda, as well as the "video taped confessions", by subjecting defendants to pre-warning interro-gations, to elicit an statement, and then have said defendant to repeat that statement on film, by using said written statement as the coercive tool to compel cooperation. This case serves to tests the Chicago Police Departments protocol for custodial interrogation that calls for giving no warnings of the rights to silence and counsel until interrogation has pro-duced a confession. Although such a statement is generally inadmissable, since taken in violation of Miranda v. Arizona, 384 U.S. 486 (1966), the interrogating officer(s) follow it with Miranda warnings on film, and then lead the suspect to cover the same ground a second time. This is consistent with what this petitioner described during the pre-trial motion to suppress, but trial counsel failed to comprehend the gravity of that testimony. This petitioner clearly stated that Detective Hamilton was present during the video taping, but did not tell him what to say while being taped. (R.K.17-21)

1.

This was due to the fact that, a prior statement had been already taken without <u>warnings</u> and out of the sight of the camera, to conceal the fact that no warnings had been administered. This approach ensured an confession that is tailored by the police, while circumventing Miranda. It also defies the use of video-taping, which is intended to record the **entire** interrogation process, and not just those segments chosen by the police. The final product is not just to be recorded, but all interrogations which lead up to the final product. The question that was presented to the United States Supreme Court, and that is being presented before this instant court is, the admissability of the repeated statement, or in this case, the "video-taped"confession. The United States Supreme Court held on the date of June 28, 2004, that such an midstream recitation of warnings after interrogation and unwarned confession could not effectively comply with Miranda's constitutional requirement. It was held that a statement repeated after a warning in such circumstances is inadmissable. Missouri v. Seibert, 542 U.S. ____ ( June 28, 2004), No. 02-1371. What stands out in stark contrast during the video taped confession is that, all questions were along the lines of the first unwarned statement. And even the trial court found it "unusual" that a defendant volunteers to write out his confession first, by voluntarily requesting a pen and paper all without any input from the police. (R. L. 65-68) This is significant for two reasons. (1) It obviated the need to have the defendant to sign any type of waiver form, and explains why no mention of warnings are contained in said statement, and (2) It provided the police with a Miranda free statement by which to format the video-taped confession, as the film clearly demonstrates. All questions are along the lines contained in the alleged hand written statement. Several references are made to the hand written statement. This case is directly on point with Seibert. As such, and considering the novelty of this claim, this petitioner will conform this argument strictly to the language contained in the Seibert case to avoid any misapprehensions that might arise, in coese with, this petitioner is proceeding pro se, and cares not to venture too far from the clear premise as is elucidated in the Seibert opinion. What this court must fathom is, the police justified their tactics by attributing a hand written statement to this petitioner first. (R. H. 73-74)

2.

Based on the totality of circumstances, this representation proves to be
circuitous at best. This petitioner was placed in an interview room at the
Area (2) at 6:00 a.m. on the date of December 2, 1999. According to the
police, this petitioner merely sat in that room un-accosted by anyone until
10:00a.m. (R. H.66-67) The arresting officer testified that he was inventorying
property, however, it was established that, no property was recovered from
this petitioner upon his being arrested.  Then suddenly, after speaking
with this petitioner for a period of 20-30 minutes, this petitioner takes
it upon himself to volunteer and write out a handwritten statement which
confesses to various aspects of the offense.  This petitioner respectfully
submits that, such was an intentional effort to avoid admitting, as was
done in Seibert that this written statement was the product of an coerced,
and unwarned interrogation. This is established by the same facts used in
the Seibert case, which just happens to implicate the Illinois Law Enforce-
ment Community. See: (R. H. 71-74) This is a State-wide practice, that was
adopted by other States that have since been caught executing this "end-
run tactic" around Miranda. In a criminal trial, wherever a question arises
whether a confession is incompetent because not voluntary, the issue is
controlled by  that portion of the Fifth Amendment, commanding that no person
shall be compelled in any criminal case to be a witness against himself.
Bram v. United States, 168 U.S. 532, 542 ( 1897). A similar rule governing
the admissability of confessions in state courts emerged from the Due Process
Clause of the Fourteenth Amendment, Brown v. Mississippi, 297 U.S. 278 (1936)
which governed state cases until the high Court concluded in Malloy v. Hogan,
378 U.S. 1, 8 (1964), that the Fourteenth Amendment secures against state
invasion the same privilege that the Fifth Amendment guarantees against
federal infringement - the right of a person to remain silent unless he
chooses to speak in the unfettered exercise of his own will, and to suffer
no penalty for such silence. In unifying the Fifth and Fourteenth Amendment
voluntariness tests, Malloy made clear what had already become apparent,
that the substantive and procedural safeguards surrounding admissability
of confessions in state cases had become exceedingly exacting, reflecting
all the policies embedded in the privilege against self-incrimination.
Miranda, 384 U.S. at 464. In Miranda, it was explained that the voluntariness
doctrine in the state cases, encompasses all interrogation practices which
are likely to exert such pressure upon an individual as to disable him from

3.

making a free and rational choice. The Court appreciated the difficulty
of judicial inquiry post hoc into the circumstances of a police interro-
gation, Dickerson v. United States, 530 U.S. 428, 444 (2000), and recognized
that the coercion inherent in custodial interrogation blurs the line between
voluntary and involuntary statements, and thus heightens the risk that the
privilege against self-incrimination will not be observed. Dickerson, 530
U.S. at 435. This was considered in Illinois, which resulted in the video-
taping of confessions, which is designed to remove the uncertainty involved
in this process. However, as applies to any tenet of law, law endorsement
has found a way to end-run this right. And as the high Court stated:

> "Hence, our concern that the traditional totality of circumstances test posed an
> unacceptable great risk that involuntary custodial confessions would escape
> detection".

Dickerson, 530 U.S. at 442 (2000) Accordingly, to reduce the risk of a coerced
confession and to implement the Self-Incrimination Clause, Chavez v. Martinez,
538 U.S. 760, 790 (2003), the Court in Miranda concluded that the accused
must be adequately and effectively apprised of his rights and the exercise
of those rights must be fully honored. Miranda, 384 U.S. at 467. Miranda
conditioned the admissability at trial of any custodial confession on warning
a suspect of his rights. Failure to give the prescribed warnings and obtain
a waiver of rights before custodial questioning generally requires exclusion
of any statements obtained. Conversely, giving the warnings and getting
a waiver has generally produced a virtual ticket of admissability; main-
taining that a statement is involuntary even though given after warnings
and voluntary waiver of rights requires unusual stamina, and litigation
over voluntariness tends to end with the finding of a valid waiver. To point
out the obvious, this common consequence would not be common at all were
it not that Miranda warnings are customarily given under circumstances
allowing for a real choice between talking and remaining silent. As this case
reflects, there are those, of course, who prefer the old way of doing things,
giving no warnings and litigating the voluntariness of any statement in nearly
every instance. In the aftermath of Miranda, Congress even passed a statute
seeking to restore the old regime, (18 U.S.C. §3501), although the Act lay
dormant for years until finally invoked and challenged in Dickerson, supra.,
which re-affirmed Miranda and held that its constitutional character pre-
vailed against the statute.

The technique of interrogating in successive, unwarned and warned phases
raises a new challenge to Miranda, but it was quickly dispatched by the
high Court. This practice was found to be not only prevalent in Rolla,
Missouri, but as was learned in that case, an officer testified that the
strategy of with-holding Miranda warnings until after interrogating and
drawing out a confession was promoted not only by his own department, but
by a **national police training organization** and other departments in which
he had worked. Consistently with the officer's testimony, the Police Law
Institute, for example, instructs that officer's may conduct a "two stage
interrogation". At any point during the pre-Miranda interrogation, usually
after arrestees have confessed, officers may then read the Miranda warnings
and ask for a waiver.  That waiver in Illinois is sought during the video-
taping of the post-warning confession. If the arrestees waive their Miranda
rights, officers will be able to repeat any subsequent incriminating state-
ments later in court. **Police Law Institute, Illinois Police Law Manual 83,**
**(Jan. 2001-Dec 2003), http://www.illinoispolicelaw.org/training/lessons/**
**ILPLMIR.pdf(as visited December 31, 2003, and available in the Clerk Of**
**Court's case file(herein-after Police Law Manual).** The upshot of all this
advice is a question-first practice of some popularity, as one can see from
the reported cases describing its use, sometimes in obedience to depart-
mental policy. Therefore, when a confession so obtained is offered and
challenged, attention must be paid to the conflicting objects of Miranda
and question-first. Miranda addressed interrogation practices, likely to
disable an individual from making a free and rational choice, about speak-
ing and held that a suspect must be adequately and effectively advised of
the choice the Constitution guarantees. The object of question-first is
to render Miranda warnings ineffective by waiting for a particularly oppor-
tune time to give them, after the suspect has already confessed. Just as
no talismanic incantation is required to satisfy Miranda strictures,
California v. Prysock, 453 U.S. 355, 359 (1981), it would be absurd to
think that mere recitation of the litany suffices to satisfy Miranda in
every conceivable circumstance. The inquiry is simply whether the warn-
ings reasonably convey to a suspect his rights as required by Miranda.
Duckworth v. Eagan, 492 U.S. 195, 203 (1989) The threshold issue when in-
terrogators question first and warn later is thus whether it would be rea-
sonable to find that in these circumstances the warnings could function

effectively as <u>Miranda</u> requires. Could the warnings effectively advise the suspect that he had a real choice about giving an admissable statement at that juncture? Could they reasonably convey that he could choose to stop talking even if he had talked earlier? For unless the warnings could place a suspect who has just been interrogated in a position to make such an in-formed choice, there is no practical justification for accepting the for-mal warnings as compliance with <u>Miranda</u>, or for treating the second stage interrogation (video-taped) as a distinct confession from the first (written statement). There is no doubt about the answer that propontents of question-first give to this question about the effectiveness of warnings given only after successful interrogation, and the high Court reasoned that, their answer is correct. By any objective measure, applied to circumstances exem-plified here, it is likely that if the interrogators emply the technique of with-holding warnings until after interrogation succeeds in elciting a confession, the warnings will be effective in preparing the suspect for his video taped confession, which is taken close in time and similar in content. After all, the reason that question-first is catching on is as obvious as its manifest purpose, which is to "get a confession the suspect would not make if he understood his rights at the onset". The sensible under-lying assumption is that, with one confession in hand before the warnings, the interrogator can count on getting its duplicate, with trifling additional trouble. Upon this petitioner, or any other hearing warnings only in the aftermath of interrogation and just after making a confession, a suspect would hardly think he had a genuine right to remain silent, let alone per-sist in so believing once the police began to lead him over the same ground again. It bears emphasizing that, the effectiveness of <u>Miranda</u> assumes the warnings can have must potentially extend through the repeated interrogation, since a suspect has a right to stop at any time. It seems highly unlikely that a suspect could retain any such understanding when the interrogator leads him a second time through a line of questioning the suspect has al-ready answered fully. The point is not that a later unknowing or involun-tary confession cancels out an earlier adequate warning; the point is that the warning is unlikely to be effective in the question-first sequence pre-viously described. A more likely response or reaction on a suspect's part would be the same as applied to this petitioner. Perplexity about the reason for discussing rights at that point, bewilderment being an unpromising frame

6.

of mind for knowledgeable decision. What is worse, telling a suspect that anything you say can and will be used against you, without expressly excepting the statement that was just given, (Written) could lead to an entirely reasonable inference that what he has just said will be used, with subsequent silence being of no avail. Thus, when <u>Miranda</u> warnings are inserted in the midst of coordinated and continuing interrogation, they are likely to mislead and deprive a defendant of knowledge essential to his ability to understand the nature of his rights and the consequences of his abandoning them. <u>Moran v. Burbine</u>, 475 U.S. 412, 424 (1986) By the same measure, it would ordinarily be unrealistic to treat two spates of integrated and proximately conducted questioning as independant interrogations subject to independant evaluation simply because <u>Miranda</u> warnings formally puntuate them in the middle. This is an intentionally designed practice being used by law endorcement to bypass <u>Miranda</u> in Illinois. The purported hand-written statement is the product of an unwarned interrogation. It guarantee's a perfect performance in front of the camera, which was implemented to hold the constitutional line. The police have formulated a means to breach that line without restraint. That is, until now. What reasonable jurist would believe that a defendant sat in a room for (3) hours alone without any police involvement. What jurist, being a reasonable person, would believe that after 20 minutes, a suspect eats a hamburger, and suddenly decides to take it upon himself to request a pen and paper, and proceed to lay out the entire case, all by himself. This was done to explain away why no independant evidence existed as to the warnings being given. The evidence of this is proven by the video tape itself. It is merely a repeat of what was written, except this time, we have an independant showing of the warnings being given. Prior to that, no evidence is shown. The defendant says no warnings were given. (R. K. 17-21) The State refuted this with mere testimonial evidence, which clearly failed to rise to the level of a prima facie showing. But what is supported is, the same written statement is repeated on film, with full <u>Miranda</u> warnings. If the first was voluntary, why does it not appear on film as well? What this case presents is, a police strategy adapted to undermine the <u>Miranda</u> warnings. And as the Supreme Court observed in <u>Seibert</u>:

> "Because the intent of the officer will rarely be as candidly admitted as it was here, the focus is on the facts apart from intent that show the question-first tactic at work".

<u>Seibert</u>, slip op. at page (14) note (6).

7.

What is abundantly clear here is, as was applicable in <u>Seibert</u>, the unwarned interrogation was conducted in the station house, and the questioning was systematic, exhaustive, brutal, and managed with psychological skill. When the police were finished, there was little, if anything, of incriminating potential left unsaid, and this records bears that fact out. The warned phase of questioning proceeded after a pause of only less than 20 minutes, as the video taped confession reveals. In the same place as the unwarned segment. When the same officer who had conducted the first phase recited the <u>Miranda</u> warnings, he said nothing to counter the probable misimpression that the advice that anything Simms said could be used against him also applied to the details of the inculpatory written statement previously elicited. In particular, the police did not advise that his prior statement could not be used. Nothing was said or done to dispel the oddity of warning about legal rights to silence and counsel right after the police had led him through a systematic interrogation, and any uncertainty on his part about a right to stop talking about matters **previously** discussed would only have been aggravated by the way Detective Hamilton and Rogers set the scene in the actual video tape, which referred to the previously given statement without fail. The impression that the further questioning was a mere continuation of the earlier questions and responses was fostered by references back to the confession already given. It would have been reasonable to regard the two sessions as parts of a continuum, which it would have been unnatural to refuse to repeat at the second stage (video) what had been said before. These circumstances must be seen as challenging the comprehensibility and efficacy of the <u>Miranda</u> warnings to the point that a reasonable person the Ahnad Simms shoes would not have understood them to convey a message that he retained a choice about continuing to talk. The high Court delivered a clear message to Illinois, since it was Illinois' training manual that detailed this strategy:

> "Strategist dedicated to draining the substance out of <u>Miranda cannot accomplish</u> <u>by training instructions</u> what <u>Dickerson</u> held Congress could not do by statute. And because the question-first tactic effectively threatens to thwart <u>Miranda's</u> purpose of reducing the risk that a coerced confession would be admitted, and because the facts here do not reasonably support a conclusion that the warnings given could have served their purpose, <u>Seiberts</u> post-warning statements are inadmissable."

<u>Seibert</u>, slip op. at page 15.

What was done against this petitioner is strikingly identical to what was
denounced by the United States Supreme Court in <u>Seibert</u>. The practice actually
is given as instructions to all law enforcement officials in Illinois. There
is absolutely no reasons of logic to believe that it is not being done.
This petitioner adopts as an Exhibit the same as was appended to the <u>Seibert</u>
case, and for this court's convenience, it is reviewable at:
**"http://www.illinoispolicelaw.org/training/lessons/ILPLMIR.pdf**(Police Law
Institute, Illinois Police Law Manual 83 (Jan. 2001-Dec. 2003). As such,
this petitioner's Fifth and Fourteenth Amendment rights as guaranteed under
the United States Constitution were violated, and his Sixth Amendment right
to fair trial, wherein, inadmissable evidence was used against this
petitioner in the trial court, which, absent such, the outcome would have
been significantly different.

### APPELLATE COUNSEL: LAW OF THE CASE

According to the United States Supreme Court, this petitioner enjoys an
absolute right to the effective assistance of counse on his first appeal
of right. <u>Evitts v. Lucey</u>, (1985), 469 U.S. 387, 393-397, 105 S.Ct. 830,
834-837. Counsel on appeal raised claims which, at best, were slated for
failure. At no time did counsel venture to entertain this instant claim,
which, at first glance was apparent from the legal landscape as established
by the United States Supreme Court. This petitioner will demonstrate. The
high Court granted certiorari in <u>Seibert</u> in (2003), 538 U.S. 1031. And prior
to such, several federal circuits had reached the same conclusions:
<u>United States v. Esquilin</u>, 208 F.3d 315, 319-321 (CA1 2000); <u>United States
v. Gale</u>, 952 F.2d 1412, 1418 (CADC 1992) At best, appeal counsel had ample
time to supplement the direct appeal before the Illinois Appellate Court,
since <u>Seibert</u> was in play as early as (2003). It was argued before the high
court on December 9, 2003, and was decided on June 28, 2004. Even if counsel
was not conversant prior to (2003), the legal landscape as of December 2003,
was of such that, any competent lawyer would have known of this issue. This
petitioner's appellate review on direct appeal was not decided until July
19, 2004, well after <u>Seibert</u>, and in fact, within sufficient time to at
least present the claim before the Illinois Supreme Court in a Petition
For Leave To Appeal, which is inclusive, for purposes of direct appeal.
<u>Clay v. United States</u>, 537 U.S. 522, 527 **(2003).**

Had appellate counsel raised this meritorious claim, the outcome would have
been different on direct appeal, since the factual basis of this case
clearly supports such an argument. And even to the extent of trial counsel
being ineffective, since even the trial court found that the alleged hand
written statement which was attributed to this petitioner was "unusual".
(R. L. 65-68) That should have alerted trial counsel that the "question-
first" tactic was at work against this petitioner. In addition, the fact
that Seibert was not decided until June 28, 2004, is sufficient cause to
entertain this claim, since this petitioner's case was pending on direct
appeal when it was decided. Lambrix v Singletary, 520 U.S. 518, 527 (1997);
CLay v. United States, 537 U.S. 522, 527 (2003). Therefore, the application
of the Seibert decision to this instant cause is permissable. It is this
petitioner's contention that, appellate counsel was ineffective for failing
to supplement his direct appeal with this claim, as was appellate counsel
ineffective for failing to raise trial counsel's ineffectiveness for fail-
ing to make this argument in the trial court, given the evidence, and that
trial court's observations. Under Strickland v. Washington, 466 U.S. 668,
104 S.Ct. 2952 (1984), a claim of ineffective assistance of counsel will
be sustained if counsel has failed to perform in a reasonably effective
manner, and there is a reasonable probability that, but for this substandard
performance, the outcome of the proceedings would have been different.
Strickland, 466 U.S. at 694, 104 S.Ct. at 2068 (1984) Illinois brought its
standards for review of ineffective counsel claims in line with Strickland
in the case of People v. Albanese, 104 Ill.2d 504, 85 Ill.Dec. 441, 473
N.E.2d 1246 (1984) Under these dual standards, this petitioner is required
to show "outcome" as the relevant point of inquiry. In showing that the
outcome would have been different, for purposes of a claim involving in-
effective assistance of appellate counsel, the Seventh Circuit Court Of
Appeals has set the following standard:

> "when a claim of ineffective assistance of counsel on appeal is based on failure
> to raise a viable claim, the court must evaluate the trial record to determine
> whether appellate counsel failed to present significant and obvious claims on
> appeal. Significant issues which could have been raised then should be compared
> to those which were raised. Generally, only when ignored issues are clearly
> stronger than those presented, will the presumption of effective assistance of
> appellate counsel be overcome".

Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1985); Fagan v. Washington, 942
F.2d 1155, 1157 (7th Cir. 1991); Freeman v. Lane, 962 F.2d 1252 (7th Cir.

1992) As the <u>Seibert</u> claim reflects, all of which is record based and obvious due to the trial court's own observation of the "unusual nature" of a defendant taking it upon himself to request a pen and papaer, and then to proceed to incriminate himself as such, appellate counsel's failure to attack this claim, and trial counsel's incompetence on direct appeal was pure incompetence, since, had it been done, this petitioner's conviction and sentence would have been reversed on direct appeal the moment that <u>Seibert</u> was decided on June 28, 2004. <u>People v. Caballero</u>, (1989), 126 Ill.2d 248, 270, 128 Ill.Dec. 1, 533 N.E.2d 1089. Outcome is the dispositive inquiry, and the outcome would certainly been different. <u>People v. Little</u>, 322 Ill.App.3d 607, 750 N.E.2d 745, 255 Ill.Dec. 828. 834-835 (2001). As such, this petitioner's FOURTEENTH Amendment right to the effective assistance of counsel on direct appeal was violated, thus necessitating that this instant court vacate the judgement entered against this defendant forthwith, <u>ex</u> <u>lege</u>.

II.

**THE STATE UNLAWFULLY AMENDED THE INDICTMENT AGAINST AHMAD SIMMS WHEN IT ARGUED AND INSTRUCTED THE JURY ON THE SEPARATE AND UNCHARGED OFFENSE OF ACCOUNTABILITY, WHICH REQUIRED DISTINCT ELEMENTS TO BE PROVEN THAN THAT WHICH WAS CHARGED.**

This petitioner maintains that, he was charged by indictment with the offenses of First Degree Murder, Home Invasion and Armed Robbery. (R. Q. 164) And in light of this petitioner being sentenced on the offenses of Home Invasion and Armed Robbery, the lawful conclusion would be that, there was no finding relative to felony murder, but rather, petitioner was convicted and sentenced for Intentional Murder. As such, Ahmad was charged as follows:

> "On or about the 29th day of November, 1992, in the county of Cook, Ahmad Simms committed the offense of first degree murder, in that he, without lawful justi-fication, and with the intent to kill or do great bodily harm to Susie Irvin, shot Susie Irving with a hand gun, thereby causing the death of Susie Irving."

(R. Q. 164). That represents the extent of the indictment relative to the charge of murder that was returned by the grand jury in this case. This manner of charging is authorized by statute, under 720 ILCS 5/9-1(a)(1). Specific attention must be direct to the fact that, nowhere in this "bare-rock" charge of first degree murder, does it mention or refer to this instant petitioner being legally responsible for the acts of another person, or that this petitioner was being charged with any offense, that constituted an crimi-nal enterprise or conspiracy. Ahmad Simm's entire defense was directed at defending against the specific charge, which entailed his proving that he did not committ the offense of first degree murder, which was what the grand jury returned against him. However, after it was clearly seen that this defen-dant's defense established that he had not committed the acts as were con-tained in the charging instrument, the State then changed its theory, and went beyond what was charged, simply as a means of securing an conviction. In total contradiction of its charging instrument, the State then told the jury that:

> "It don't matter who shot Susie Irving...This defendant is a shareholder in the Niles, Simms and King murder **conspiracy** of Susie Irving...It doesn't matter if he knew that Susie Irving was going to be killed that day. It doesn't matter."

(R. Q. 50-51) This method of blind-siding this petitioner, precluded any efforts to call witnesses that would not had been listed prior to the close of the defendant's case in chief. This revelation was not made until after the defense had rested before the jury.

This revelation transpired well after the time by which the defense could
have filed any pre-trial motions to dismiss the indictment, which is quite
relevant, since, failure to attack the indictment prior to trial requires
a substantially different showing than would exist if such an motion is made
in the pre-trial context. People v. Kincaid, 87 Ill.2d 107, 429 N.E.2d 508,
(1981)  As such, no challenge could be formally made to this change of theory
by the State. Additionally, the time in which to file or make a Motion For
Directed Verdict had passed, since, the defense had rested, and the State
had also rested its case. The purpose of the instruction conference is meant
solely to allow the parties to tailor their arguments to what the jury would
be instructed on. This does not include an opportunity to change the actual
charging instrument by going beyond what was charged initially. Rule (451)(c)
of the Illinois Supreme Court's Rules, specifically provide that:

> "The court shall hold a conference with counsel to settle the instructions and
> shall inform counsel of the court's proposed action thereon prior to the arguments
> to the jury."

Section 2-1107(c) of the Code Of Civil Procedure, 735 ILCS 5/2-1107(c), which
is made applicable to Criminal case by virtue of Supreme Court Rule 451(c)(
177 Ill.2d R. 451(c). As Smith-Hurd Commentary confirms:

> "The purpose of this section is to allow the attorneys to know the law on which
> the jury will be **instructed so that the attorneys can tailor their arguments**
> **accordingly.**"

That is the limits imposed on the instruction conference. That is the sole
authority which allows the jury to be instructed in Illinois. At no time
does this Rule permit the State to broaden its theory, or amend the indict-
ment to include offenses never charged. And since Rule 451(c) does not come
into play until well after both sides have rested, it is apparent then that,
the charges cannot be changed, since the defense had no opportunity to rebut
any changes, except in the closing argument. And clearly, the jury is instruct-
ed that, arguments made by counsel is **not evidence.** So the fact of counsel
being able to attempt to refute any changes or amendments is irrelevant,
since the jury is also told that such arguments are not to be considered
as evidence. And that instruction was specifically tendered and given to
the jury in this case. Thus, when the State changed its theory in closing
argument, the defense was unable to refute said change, especially where
the burden of proof changed, as did the charging instrument itself.

Supreme Court Rule 451(c) at no time authorized the State to include an offense never charged during the instruction conference. It only allows the State to submit instructions which allows it to argue before the jury that which conforms to said instructions. Which are to be based on what was presented during the trial and certainly not uncharged offenses, which contain essential elements that were never lodged against this petitioner. This type of conduct was rejected by the United States Supreme Court, when it stated:

> "at every stage, the defendant is met with a different theory, or by no theory at all. Far from informing the defendant of the nature of the accusations against him, the indictment left the prosecutor to roam at large, to shift its theory of criminality so as to take advantage of each passing vicissitude of the trial".

Russell v. United States, 369 U.S. at 768, 82 S.Ct. at 1049. Therefore, at the jury instruction stage, the state changed it theory, which precluded the defense from being able to present any form of defense to that change. What the State did was to, broaden the indictment beyond that charged by the grand jury, and a court may not convict any defendant for an offense, different from that specifically charged by the grand jury. Stirone v. United States, 361 U.S. 212, 215-219, 80 S.Ct. 270, 272-274. The State used the jury instruction stage to amend in an substantive way the indictment which was lodged against Ahmad. This practice has been universally rejected. United States v. Leisure, 844 F.2d 1347 (1988); People v. McCauley, 2 Ill.App.3d 734, 736, 277 N.E.2d 541; People v. English, 287 Ill.App.3d 1043, 1047, 679 N.E.2d 494 (1997) In order for this petitioner to establish his point, it is imperative that he expound on the elements necessary to establish accountability. Additionally, what actually constitutes accountability in the very real sense. Accountability is a legal theory where a defendant is held responsible for a crime which he personally did <u>not</u> committ, but which was committed by an accomplice. People v. Skiles, (1983), 450 N.E.2d 121 Had the State wanted to charge the petitioner with a crime that he did not committ, then the State should have asked the grand jury to return a True Bill based on that theory. It did not. It asked the grand jury to return a True Bill based on this petitioner committing the act of murder **himself**. Thus, that constitutes the extent of the State's burden. As the State's closing argument and instructions show, it went far beyond the parameters of the charging instrument, and presented the jury with offenses never charged against this petitioner. Ahmad now will show why Accountability is a distinct and separate offense.

14.

Interesting enough is the fact that, there is law which states that, the
State cannot change the offense through the jury instructions. People v.
English, 287 Ill.App.3d 1043, 1047 (1997); People v. McCauley, 2 Ill.App.3d
734, 736; United States v. Leisure, 844 F.2d 1347 (1988). However, there
is no Statutory authority in Illinois which authorizes the State to use the
Jury Instruction conference as an opportunity to change the offense or its
theory of the case. 177 Ill.2d 451(c). In the absence of any authority which
specifically states that such could be done, the lawful presumption is that,
the legislature did not intend such to be included. And despite the many
cases which presumes such to be the case, no judicial opinion can trump the
intent of the legislature. Especially where the legislature fails to make
such an act lawful. Moreso, it seems that the intent of the legislature
is quite clear, wherein, Section 2-1107(c) of the Code Of Civil Procedure,
735 ILCS 5/1-1107(c) fails to include this practice. And had such been so
intended, quite assuredly, the Illinois Supreme Court, when it adopted Rule
451(c) would have stated it plainly. It did not. It only provides for a jury
instruction conference to "settle the instructions and shall inform counsel
of the court's proposed action thereon prior to the arguments to the jury".
Arguments is the operative word. This conference is designed solely for the
parties to tailor their arguments to conform to the instructions. And those
instructions must conform to the grand juries indictment, and not anything
beyond it. The very judicial interpretation of accountability is dispositive
of this claim:

> "accountability is an alternative basis of securing an conviction in the place
> of the actual charge returned by the grand jury".

People v. Hicks, 230 Ill.Dec. 244 (1998); People v. Stanciel, 153 Ill.2d
at 233 (1992) This alternative basis acts to broaden the means by which an
conviction can be achieved, other than that which is specifically charged.
At no time however, was the grand jury asked to consider this alternative
means of securing an conviction, whereas, this alternative contains elements
of an offense quite distinct from that of first degree murder. The problem
with this alternative is, it permitted the State to amend or broaden the
indictment, which was a material change, since the burden of proof was no
longer what it was based on the indictment.

15.

It was no longer the same for the following sound and legally based reasons.
Under the "alternative basis of liability theory", also known as the theory
of accountability entails a distinct burden of proof from that of what was
decided and returned by the grand jury. The state now must prove "either
before or during the commission of an offense, and with the intent to promote
or facilitate such commission, the defendant solicits, aids, abets, agrees
or attempts to aid such other person in the planning or commission of the
offense". 720 ILCS 5/5-2(c). In coese with this distinct burden of proof,
the State must also prove that the defendant possessed the requisite intent
to promote or facilitate the crime, and the State must present evidence which
establishes beyond a reasonable doubt, that either (1) the defendant shared
the criminal intent of the principal, or (2) there was a common design".
People v. Taylor, 712 N.E.2d 326 (199) So what happens is, the State seeks
an indictment charging this petitioner as being responsible for the crime,
based on his intent to perform such acts. During the trial, the State puts
on evidence which falls short of this burden. During the jury instruction
conference, the State changes its theory, and broadens to indictment to in-
clude the acts of another, and then proceeds to argue such in its closing
argument. The promblem at this point is, if the State offers proof of another
committing the crime during the trial, then, it has failed to meet its burden
of proof based on the indictment as returned. Moreso, while offering evidence
during trial of another committing the acts, the defense is offering evidence
based solely on the indictment. Which is, the **defendant** is innocent and did
not commit the offense. Thus, the State is placing the defendant on trial
for an offense different than  what the defense is geared towards. And quite
different from what the grand jury charged the defendant with. The court
then tells the jury that defense counsels arguments are not evidence, but,
this is the only time that the defense can venture to offer **evidence** to refute
the alternative theory offered by the State. And since the jury is presumed
to follow the trial court's instructions, it merely disregards the defense's
efforts as being mere opinion and not  evidence. The State is requireds to
prove this "alternative theory of liability" beyond a **reasonable doubt**. This
seemingly suggest that, the alternative is not a theory at all, but rather
is, an actual criminal offense.

16.

This is supported by the fact that, the only time in American Law that "reasonable doubt" applies is relating to criminal offenses, and certainly not "mechanisms which pave the way to conviction". The United States Supreme Court recently espoused their re-iteration of this entrenched principle in a case which dealt with the reasonable doubt standard:

> "The demand for a higher degree of persuasion in **criminal offenses** was recurrently expressed from ancient times, though its crystalization into the formula "beyond a reasonable doubt" seems to have occurred as late as **1798**. It is now **accepted practice** in common law jurisdictions as the measure of persuasion by which the prosecution must convince the trier of fact of all the **essential elements** of guilty in a **CRIMINAL OFFENSE**."

Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348 (2000); In re Winship, 397 U.S. at 361 (1970) So if the above stated **measure of persuasion** is reserved solely for the proof of the essential elements in criminal offenses, then, to have to prove any of the many enumerated elements of accountability beyond a reasonable doubt conclusively categorizes accountability as a criminal offense as a matter of law. And this criminal offense is distinct from that which was returned by the grand jury. What further offers credence to this proposition that accountability is a separate offense from that which was charged by the grand jury is the United States Supreme Courts formula to determine how to adjudicate the question of where there exist one offense or two:

> "Pursuant to the Supreme Court's **Blockburger** decision, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is **whether each provision requires proof of a fact which the other does not**".

Texas v. Cobb, 121 S.Ct. 1335 (2001); re-affirming Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180. There seemingly is no dispute as to whether "accountability" requires proof of elements distinct from that of first degree murder. It is further not a issue in dispute as to whether those elements must be proven beyound a reasonable doubt. As such, this misnomer is actually an criminal offense, separate and distinct from that of first degree murder. It is understood as to what must be proven under the bare-rock charge of first degree murder. THose proofs must be proven beyond a reasonable doubt. Conversely, and quite distinct, accountability requires proof that, either before or during the commission of an offense, and with the intent to promote or facilitate such commission, one solicits,

17.

aids, abets, agrees, or attempts to aid, such other person in the planning
or commission of the offense. And to prove the defendant possessed the re-
quisite intent to promote or facilitate the crime, the State must **prove**
**beyond a reasonable doubt** that one shared the criminal intent of the principal
or there was a common criminal design. People v. Taylor, 712 N.E.2d 326
(1999). Clearly, no such essential elements are required to prove first degree
murder. Clearly accountability has elements that first degree murder does
not. Clearly, the only common denominator between the two offenses, are,
both must be proven beyond a reasonable doubt, which is consistent with the
measure or burden of persuasion reserved from criminal offenses. In re
Winship, 397 U.S. at 361 (1970). Thus, the jury instruction conference which
is authorized by statute and Supreme Court Rule cannot be used to interject
an uncharged offense, which is separate and quite distinct from that which
was charged by the grand jury. And that is precisely what was done in this
case. The only defense that this petitioner could offer and did offer was
one statement to the jury during closing argument which stated:

"He is not responsible".

(R. Q. 123) That was all that was offered as a defense to a criminal offense
that was first charged by way of jury instruction. And even then, the jury
was told to ignore that statement, since it was not to be considered evi-
dence. On the other hand, the State consumed an entire argument and had the
added advantage of sending the instructions to the jury room with the jury.
(R. Q. 112, 114-115, 117, 120-122). And the Court then re-enforced this act
by instructing the jury on the uncharged offense. (R. Q. 162) The defense
could only object to this uncharged offense, which was over-ruled. (R. Q.
179) The jury had no way of knowing that the instructions were unconstiti-
tutional.

    b.   **The Unconstitutional instruction rendered the verdict unreliable**.
This petitioner respectfully submits that, jurors are not generally equipped
to determine whether a particular theory of conviction submitted to them
is contrary to law. They cannot discern for example, whether the action in
question fails to come within the statutory definition of the crime, or if
the instructions go beyond the actual charge. When, therefore, jurors have
been left, after being specifically instructed, to the option of relying

upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error. Duncan v. Louisiana, 391 U.S. 145, 157, 88 S.Ct. 1444 (1968); United States v. Townsend, 924 F.2d 1385, 1414 (7th Cir. 1991); Griffin v. United States, 502 U.S. 46, 59-60, 112 S.Ct. 466 (1991); Street v. New York, 394 U.S. 576, 588, 89 S.Ct. 1354 (1969) Clearly, a conviction based upon charges never made by the grand jury, but lodged by jury instructions if unconstitutional. United States v. Pigee, 197 F.3d 879, 887 (7th Cir. 1999) To say a general verdict of guilty should be upheld though it cannot be said that it did not rest on the invalid instructions on which the case was submitted to the jury, would be to countenance a procedure which would cause a serious impairment of constitutional rights. No harmless error could prevail here since, such an analysis would look to the basis on which the jury **actually** rested its verdict. Yates v. Evatt, 500 U.S. 391, 404, 111 S.Ct. 1884 (1991). The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would have been rendered, but whether, the guilty verdict actually rendered in **this** case was surely attributable to the error of instructing on an offense never charged. That must be so, because to hypothesize a guilty verdict that was never in fact rendered, no matter how inescapable the findings to support that verdict might be, would violate the jury trial guarantee. Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078 (1993). In this case, an legally unaccpetable alternative was presented to the jury, and that is not to be ignored. In closing this argument, this petitioner maintains that, accountability is referred to as an "alternative basis of liability". People v. Hicks, 230 Ill.Dec. at 247 (1998). Alternative literally means "available in **place of something else. One of two or more possibilities.**" Accountability was offered in **place** of the specific basis of liability contained in the grand jury indictment. Accountability was offered as one of two possible ways to convict this petitioner. The first being based on the grand jury indictment. The second, and chosen one being, based on the broadened and amended version of the grand juries indictment. The State took it upon itself to offer the jury alternative possibilities never considered by the grand jury, which, for the sake of argument, were separate and distinct offenses from that of first degree murder, which is what was returned by the grand jury.

19.

If the State desired an alternative criminal offense on which to base an conviction, it was to have asked the grand jury to decide that alternative. Considering the alternative is an separate and distinct criminal offense, there was no other option than to have asked the grand jury. The State did not. The indictment returned in this case utterly failed to apprise Ahmad with reasonable certainty of the nature of the charge against him. Ahmad had no idea that he was being charged with conspiracy to committ murder, since that is the only separate and distinct offense in the Illinois Compiled Statutes which share the same essential elements as that of accountability. In fact, one of the first accountability cases in Illinois refers to accountability as the criminal offense that it is:

> "That they were all co-conspirators in a dangerous enterprise, is an undisputed fact. Such being the case, whatever was done by one, in contemplation of law, was done by all, and all are therefore equally responsible".

Hamilton v. People, 113 Ill. 34 **(1885)**. The court in (1885) referred to this "alternative means/mechanism of securing conviction" by its actual name. It was conspiracy in (1885), and it remains so now. And just as conspiracy constitutes a separate and distinct offense, so does accountability, since both require proof of the same facts to secure an conviction. Both squarely distinct from that of first degree murder. This failure to apprise this defendant of the nature of the charges against him, which operated to deny to this defendant any opportunity to defend against this offense violated his right to due process. United States v. Garcia-Geronimo, 663 F.2d 738, 741 (1981) And let there be no dispute about it, the validity of the indictment is subject to measurement against general Fourteenth Amendment guarantees of due process, despite no Federal right to grand jury indictment existing. Ballard v. Bengston, 702 F.2d 656.

## CONCLUSION

The United States Supreme Court, not this petitioner, defined and set the criteria for determining when there exist one offense or two. Blockburger, v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, affirmed in Texas v. Cobb, 121 S.Ct. 1335 (2001). Under that formulation, accountability qualifies as a separate and distinct offense. The fact that, accountability contains elements to be proved that first degree murder does not is dispositive.

20.

The fact that, accountability requires a standard of proof which entails
its elements being proven beyond a reasonable doubt is conclusive indicia
of it being a separate and distrinct criminal offense. People v. Taylor,
712 N.E.2d 326 (1999). And Taylor is a decision from the Illinois Supreme
Court, and not the product of this petitioner's imagination. The fact that
criminal offenses are the only offenses which must be proven being a rea-
sonable doubt further sustains this petitioner's position, which is re-
enforced by the clear pronouncement of the United States Supreme Court.
In re Winship, 397 U.S. at 361 (1970). And lastly, since accountability has
the effect of an separate and distinct offense, it is not relevant that it
is currently defined as a mechanism or theory of alternative liability, since
the United States Supreme Court has also stated that:

> "Despite what appears to us the clear elemental nature of the factor here,
> the relevant INQUIRY is ONE NOT OF FORM, BUT OF EFFECT.

Apprendi v. New Jersey, 530 U.S. at 494, 120 S.Ct. at 2365 (2000). It is
unequivocally clear here that, the effect of accountability is the same as
that of an criminal offense. It has its own burden of proof on its own
distinct elements. It requires a measure of persuasion which is identical
to that of an criminal offense, which is "reasonable doubt". It contains
facts to be proved which are essential elements, that first degree murder
does not. So, form aside, the effect is that of an criminal offense. And
to have interjected this offense by way of jury instruction acted to broaden
the indictment as returned by the grand jury, which rendered any verdict
unconstitutional. Stirone v. United States, 361 U.S. 212, 219, 80 S.Ct. 270,
274; Russell V. United States, 369 U.S. 749, 763-764, 82 S.Ct. 1038, 1046-
1047 (1962); People v. Soto, No. 2-01-0119 (Feb. 4, 2003) It is of no con-
sequence that Soto was over-turned by the Illinois Supreme Court. What is
germane here is, more than one Illinois Appellate Court recognized that
accountability acts to "broaden" the charges returned by the grand jury.
There is no authority that permits the State to use the jury instruction
conference to broaden or amend the grand jury indictment. Such is not con-
tained in the Illinois Supreme Court's Rule 451(c), and nor is it contained
in the legislatures enactment governing this jury conference. 735 ILCS 5/2-
1107(c). But there is substantial law which prohibits the charges to be
changed in the jury instructions. That glaring fact is dispositive of this claim.

21.

### III.

**TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO PRESENT A DEFENSE EVEN IN HIS CLOSING ARGUMENT RELATIVE TO THE STATE'S ACT OF AMENDING/BROADENING THE INDICTMENT PRIOR TO THE CLOSING ARGUMENT PHASE.**

This petitioner maintains that, he enjoys a clear and unequivocal right to the effective assistance of counsel at trial pursuant to the Sixth Amendment of the United States Constitution. U.S. Const. Amend. VI. Under the above premise, this petitioner also enjoys a right to make a closing argument at trial, which is designed to meet those allegations which have been lodged against this petitioner. Under current case law in Illinois, it is permissable for the State to amend or broaden the charges during the jury instruction conference. This is presumingly made lawful, since, it is done before either side makes its closing argument before the jury. Pursuant to People v. Millsap, 244 Ill.Dec. 54, 724 N.E.2d 942 (2000), the purpose of the jury instruction conference is obvious:

> "It allows the attorneys to know the law on which the jury will be instructed so that the attorneys can tailor their arguments accordingly".

Millsap, 724 N.E.2d at 947 (Ill. 2000). Ahmad maintains that, if it lawful for the State to amend or broaden the initial indictment, interjecting "accountability" at the jury instruction conference, and arguing "accountability" in its closing argument, then, defense counsel must be required to meet this new theory (charge) by defending this petitioner against that new theory (charge). This is seemingly supported as follows. In the case of People v. Jamison, 207 Ill.App.3d 565, 152 Ill.Dec. 530, 566 N.E.2d 58 (1991), the appellate court stated that:

> "The supplement instruction allowed the defendant to be convicted on a theory never addressed".

Jamison, 566 N.E.2d at 60 (1991). Now, with that understood, this seems to indicate that, the purpose of the jury instruction conference, though disputed by this petitioner, is to allow defense counsel ample notice of this change of theory, to allow defense counsel an opportunity to present some form of argumentative defense to this new theory. Such being the case then, the failure to address the new theory must be deemed ineffective assistance of counsel, since, without addressing it, the defendant is then left with no defense to the new theory.

22.

This is again made abundantly clear, since the Illinois Supreme Court
looked to the Ninth Circuit Court Of Appeals to resolve Millsap, and
the case that was utilized was United States v. Gaskins, 849 F.2d 454
(9th Cir. 1988). In that case, the jury was instructed on an aiding
and abetting issue, when the defense had no opportunity to address
that issue at trial or in the closing argument. On appeal, the Ninth
Circuit found that the defense before the jury at trial, had only con-
sisted of argument that the defendant was guilty as a principal, and
that at no time did defense counsel have an opportunity to address
the new theory concerning the aiding and abetting. The Ninth Circuit
found that, the elements necessary to convict a defendant as a principal
are different from those necessary to convict him as an aider and abettor, and
the defendant had not been given a chance to address the aiding and abetting
theory. Gaskins, 849 F.2d at 458-460 (1988). Additionally, the United States
Supreme Court held in Herring v. New York, 422 U.S. 853, 857-859, 95 S.Ct.
2550, 2553-2554 (1975), that a defendant's right to make a closing argument
is guaranteed by the Constitution. The Herring Court quoted with approval
the following passage from Yopps v. State, 228 Md. 204, 178 A.2d 879 (1962):

> "The Constitutional right of a defendant to be heard through counsel necessarily
> includes his right to have his counsel make a proper argument on the evidence
> and the applicable law in his favor, however simple, clear, unimpeached, and
> conclusive the evidence may seem".

Herring, 422 U.S. at 860, 95 S.Ct. at 2554, quoting Yopps, 228 Md. at 207,
178 A.2d at 881.  This clearly demonstrates that this petitioner has a right
to expect his counsel to rebut the theories advanced by the state at trial,
including this "accountability" theory. This was not done as the record clear-
ly shows. After the State argued in its closing argument all aspects of this
"accountability" theory, defense counsel got up and made a single statement
in passing that stated:

> "He's not responsible".

(R. Q. 123) This constituted the only defense or argument made concerning
the newly interjected "accountability" theory. So even assuming arguendo
that this "accountability" theory is lawful, then at least this petitioner
was entitled to some defense being made against it. This petitioner was fur-
ther entitled to a closing argument which addressed this theory from counsel.
Neither was done. Nowhere in counsel's entire closing argument does he offer
one scintilla of argument dedicated to this theory. Counsel was ineffective.

Counsel continued to argue that this petitioner had not committed the crimes himself, as he had done the entire trial, and as was consistent with the Indictment returned. Even after the unlawful amending of the indictment, which for the sake of this argument is presumed to be lawful, trial counsel still failed to address this newly interjected theory. This acted to deny to this petitioner an effective closing argument based on the theory presented by the state, which acted to leave this petitioner without any defense to this newly interjected theory. Which acted to deny to this petitioner any opportunity to address this newly interjected theory before the jury. This was clearly below the standard of professional conduct reserved for counsel, and but for this conduct, the outcome would have been different. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2952 (1984); People v. Little, 322 Ill.App.3d 607, 750 N.E.2d 745 (2001). The record bears out that, there was extensive argument from the State as to the "accountability" theory. (R.Q. 112, 114-117, 120-122). In response to this extensive argument and in-structions, defense counsel made a single statement in passing which stated: **"He's not responsible"**, and then proceeded to argue that this petitioner himself had not committed the offenses. (R. Q. 123) Thus, this petitioner had no viable or effective defense presented to the jury on the newly inter-jected theory known as "accountability". This acted to violate this petitioner's Sixth Amendment right to the effective assistance of counsel at trial. This petitioner must emphasize that, this trial counsel by no means condones the practice of amending or broadening the indictment to include different ele-ments than those found by the grand jury. Conversely, since it is maintained currently that this practice is not contravened by the Constitution, it is alternatively being maintained that, in light of current precedent, this petitioner is entitled to some form of defense being argued in closing before the jury since, the interjection of this alleged "theory" comes not before trial or even during trial, but rather, comes after the **close** of of the taking of evidence. Thus, the only opportunity to address this "theory" is in closing argument, and trial counsel is required to make that argument since this petitioner does have a constitutional right to such an closing argument which is to consist of trial counsel addressing each theory so ad-vanced. Herring, 422 U.S. 853, 857-859 (1975)

## IV.

## APPELLATE COUNSEL WAS INEFFECTIVE

This petitioner re-iterates that, his right to the effective assistance of counsel on direct appeal is absolute. Evitts v. Lucey, (1985), 469 U.S. 387, 393-397, 105 S.Ct. 830, 834-837. For appellate counsel to have failed to raise the claim that trialcounsel was ineffective for failing to address the newly interjected "theory of accountability, when it was obvious and apparent from the trial record constituted clear ineffective assistance of counsel on direct appeal. This claim could not had been raised on direct appeal, since the cause of such an omission was the fact of counsel on direct appeal being ineffective. It is quite clear that, trial counsel should have been aware of the fact that it was counsel's responsibility to address the newly interjected "theory" of accountability as argued by the State in its closing argument. Equally, appellate counsel is aware that, the only time that such an theory can be addressed is in the closing argument stage of the trial proceedings, since, all evidence had been submitted to the jury prior to the jury instruction conference. The record bears out that, trial counsel made a sole statement in response to this newly interjected theory. Thus, appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness, and as such, this claim could not be deemed waived, since the failure to raise it on direct appeal was due to counsel on appeal being ineffective. People v. Whitehead, 169 Ill.2d 355, 370-371 (1996). As such, this petitioner respectfully submits that his Fourteenth Amendment right to the effective assistance of counsel on direct appeal was violated.

## V.

### THE TRIAL COURT PROHIBITS THE JURY FROM CONSIDERING DEFENDANT'S DEFENSE TO THE NEWLY INTERJECTED THEORY BY INSTRUCTING THE JURY TO DISREGARD SAID EVIDENCE

This petitioner maintains that, it has been established that, the only time that any defendant could address the newly interjected theory that is advanced by the state at the jury instruction conference and in closing arguments is during the defendant's closing arguments. It is further understood that, typically, the trial court allows the jury to have the instructions with them in the jury room during deliberations. So that the record is clear, the "theory of accountability" is not mentioned or presented before the jury until after the close of all evidence from both sides. It is not charged by the grand jury. Current Illinois law allows for this practice, and considers clsoing argument sufficient to bring in any evidence which acts to address this newly interjected theory. Despite no authority existing under 735 ILCS 5/2-1107(c) or Supreme Court Rule 451(c), the jury conference is used to interject this new "theory". So it is quite clear that, there exist no other chance to address this theory, but during closing **argument** by the defense. The State on the other hand, argues it during their (2) chances at closing argument, and have the added advantage of allowing the jury to take the newly interjected theory, which is contained in the instructions, back to the jury room during deliberations. The jury also are told by the trial court to disregard any argument made by the defense during the closing argument, and that instruction also goes with the jury to the jury room. This petitioner will demonstrate this point. After closing arguments are completed, the trial court instructs the jury that:

> "You should **disregard** testimony and exhibits which the court has refused or stricken. THE EVIDENCE YOU SHOULD CONSIDER CONSISTS ONLY OF THE TESTIMONY OF THE WITNESSES AND THE EXHIBITS WHICH THE COURT HAS RECEIVED*****
>
> Opening statements are made by the attorneys to acquaint you with the facts **they expect to prove.** Closing arguments are made by the attorneys to discuss the **facts and circumstances** in the case and should be **confined to the evidence** and to reasonable inferences to be drawn from the **evidence.** **NEITHER OPENING STATEMENTS NOR CLOSING ARGUMENTS ARE <u>EVIDENCE</u>, and any argument made by the attorneys which is not based on the evidence should be disregarded."**

(I.P.I. Instructions) These instructions are given in every criminal trial. The court then proceeds to couch the "accountability" language into the charges by stating that "legal responsibility for another" is now the charge, and not what was returned by the grand jury.

The jury is then lead to believe that, the verdict form, which has only First
Degree Murder is the same as that which is contained in the instructions
which presume to define First Degree Murder. The definition of First Degree
Murder in the instructions was:

> "To sustain the charge of murder, the State must prove the following propositions:
> First, that the defendant, or one for whose conduct he is legally responsible".

(I.P.I. Instructions) Now, after leaving this defendant with one opportunity
to address the newly interjected theory of "accountability" in his closing
argument, which must entail reversing the actual and initial defense that
defendant himself did not committ·the crimes, the trial court turns around
and instructs the jury to disregard that closing argument, since it is not
based on the evidence adduced at trial. The problem is, the evidence that
the defense introduced all went to proving that the defendant himself did
not committ the crime, which was consistent with the grand jury indictment.
The court then instructs the jury that, counsel is to be confined only to
what was presented during the trial. Then, the court sends instructions back
which defines murder as containing the same elements as that of "accountability"
which is argued vehemently by the State in its close. However, the verdict
form says only First Degree Murder, which leaves the jury with the mistaken
impression that the accountability definition is the same as First Degree
Murder, which is confirmed by the fact that no verdict form is given to the
jury which says guilty or not guilty of accountability. So the jury, basing
its decision on the states closing argument, the judges instruction to dis-
regard the defendants closing argument, with the accountability definition
for first degree murder as its guide, proceeds to find the defendant guilty
of first degree murder, since, that is the only verdict form available. Any
reasonable person would believe that the legal definition for murder is the
same as the accountablity elements if no separate verdict form is given.
Also, since the trial court has also instructed the jury that, the only evi-
dence is testimony and exhibits, it really makes little or no difference
what defense counsel argues in his close to the newly interjected theory.
It will be ignored by the jury pursuant to its clear and unequivocal instruct-
ions. So to say that this petitioner has an opportunity in his closing argu-
ment to address the newly interjected "theory" of accountability is a facade,
and said interjection at the (11th hour), after the defense rest acts to
deny to this petitioner any opportunity to address this amendment, or newly
interjected theory of the state.

Therefore, the rationale which resulted in reversals of convictions, based on a defendant being hit with a theory never addressed at trial applies with equal force to this case. Jamison, 566 N.E.2d at 60 (1991); Millsap, 724 N.E.2d at 947 (2000); Herring v. New York, 422 U.S. 853, 857-859 (1975); Gaskins, 849 F.2d at 458-460 (1988) To continue to allow this new theory interjection practice, would entail the entire system being flipped on its head to accomodate it. All I.P.I. Instructions concerning closing arguments would have to be revised to exclude the "disregard" text. Also, to exclude what constitutes evidence to be regarded.. Separate verdict forms would have to be given for accountability to distinguish it from the definition of first degree murder. As matters now stand, the jury is guided into believing that what the state argues during its close is sanctioned by the trial court, since the instructions given which define murder includes what is being argued by the State relative to the "accountability" theory. And since the trial judge specifically instructs the jury to disregard closing arugments as not being evidence, only the defense is ignored and not the state. This is made apparent to the jury since, the only verdict form available is for first degree murder and not accountability. Thus, to the jury, they are one of the same, and no﹩-one ever know which was the basis of the verdict. This was squarely addressed by the United States Supreme Court, when it stated:

> "There is no way to know whether these or any other appropriate arguments in summation might have affected the ultimate judgement in this case. The credibility assessment was solely for the trier of fact. But before that determination was made, the appellant, through counsel, had a right to be heard in summation of the evidence from the point of view most favorable to him."

Herring, 422 U.S.at 864. In this case, the jury was told to disregard the view most favorable to this defendant, and since the defense, before resting, put on its case, based solely on the indictment as charged, the jury was left with the mistaken impression that the defendant failed, during the trial to meet its burden, since, the instructions defined first degree murder as an hybrid of accountability, which was never addressed before resting on behalf of the defendant. The single verdict form supported this conclusion on the part of the jury, since the sole verdict form made no mention of legal responsibility for another. Thus, to any reasonable person, they were one in the same. This acted to deny to this petitioner any remnant of a fair trial based on due process, which violated the Sixth and Fourteenth Amendments to the United States Constitution.

VI.

**PETITIONER WAS NOT TAKEN WITHOUT DELAY BEFORE THE NEAREST AND MOST ACCESSIBLE JUDGE IN COOK COUNTY WHERE A PROMPT PROBABLE CAUSE DETERMINATION COULD BE MADE AS TO THE ARREST OF THIS PETITIONER.**

This petitioner was arrested, without a warrant, on the date of December 2, 1999 at approx. 5:30 a.m. in the morning. (R. H. 62) This petitioner was transported not to the nearest and most accessible place which housed a judge, but was rather, taken to the Area (2) Police Lock-up and placed in an interrogation room cuffed. (R. H. 62-67) According to police testimony, this petitioner was left in said interrogation room, cuffed, and locked in until 10:00a.m. That this petitioner then was interrogated, at which time, according to testimony from the Chicago Police Department, this petitioner provided a written statement to police. (R. H. 76) Up to this point, no warrant had issued against this petitioner, and even after the alleged written statement, this petitioner was not taken before the nearest and most accessible judge in Cook County. But rather was, again interrogated before a video camera to elicit yet another statement from this petitioner. (R. L. 68) That at 1:00a.m. on the date of December 3, 1999, this petitioner was finally allowed to be processed, so that he could be transported to the County facility. What is clear here is, at some point in petitioner's detention, a decision was made that Ahmad would be held past call. This means he would not be taken before a judge for a probable cause hearing at the earliest possible moment, which is the norm. The record reflects that, this petitioner allegedly made his first incriminating statement (4) hours after he had been arrested. (R. H. 76) Which was fairly early in the proceedings when he was formally arrested. He was not, however, taken before a judge at that time. The United States Supreme Court has indicated that:

> "Whatever procedure a State may adopt for getting an accused before a judge or magistrate, it must provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, and this determination must be made by a judicial officer either before or promptly after arrest".

Gerstein v. Pugh, 420 U.S. 103, 125-125, 95 S.Ct. 854, 868-869 (1975). The Gerstein rule has been codified in Illinois pursuant to section 109-1(a) of the Code Of Criminal Procedure of 1963 (725 ILCS 5/109-1(a) (West 1998). Instead of taking this petitioner before a judge, the investigation was classified as ongoing, when, evidence was to be gathered.

The United States Supreme Court, being compelled by necessity to resolve the issue of "prompt" due to the split in the many Circuits, rendered its opinion in <u>McLaughlin</u>. In this instant case, Ahmad was detained at the Area (2) police facility as a direct means of gathering other evidence, including incriminating statements from this petitioner. The <u>McLaughlin</u> Court, made it clear however that:

> "This is not to say that the probable cause determination in a particular case passes constitutional muster simply because it is provided within (48) hours. Such a hearing may nonetheless violate <u>Gerstein</u> if the arrested individual can prove that this or her probable cause determination was delayed <u>unreasonably</u>. Examples of **unreasonable** delay are delays for the <u>purpose of gathering additional evidence to justify the arrest</u>....Where an arrested individual does not receive a probable cause determination within (48) hours, the calculus changes. In such a case, the arrested individual does not bear the burden of proving an unreasonable delay. Rather, the burden **shifts** to the government to demonstrate the existence of a bona-fide emergency or other extraordinary circumstance. The fact that in a particular case it may take longer than (48) hours to consolidate pretrial proceedings does **not qualify as an extraordinary circumstance. Nor for that matter do intervening week-ends. A jurisdiction that chooses to offer com-bined proceedings must do so as soon as is reasonably feasible, <u>but in no event later than (48) hours after arrest</u>**".

<u>County of Riverside v. McLaughlin</u>, 111 S.Ct. at 1670 (1991). This petitioner was not taken before a judicial officer simply due to the police wanting to gather additional evidence against this petitioner, including incriminating statements. The arrest is invalid.

### REMEDY FOR GERSTEIN/MCLAUGHLIN VIOLATION

After a detailed analysis of state and federal law, the Court in <u>People v. Willis</u>, 344 Ill.App.3d 868, 875, 279 Ill.Dec. 755, 801 N.E.2d 47 (2003) stated:

> "We are persuaded the decisions we have cited require us to maintain a distinction between the interests served by the fourth and fifth amendments. We deal with the kind of unlawful detention held unlawful in <u>McLaughlin</u>. This is a fourth amendment issue. If we were to say there is no remedy for violation of it, we would be doing exactly what the courts in <u>Dunaway v. New York</u> and <u>People v. White</u> said we cannot do---which is to allow law enforcement officers to violate the fourth amendment with inpunity, safe in the knowledge that they could wash their hands in the procedural safeguards of the Fifth. <u>Dunaway v. New York</u>, 442 U.S. 200, 219, 99 S.Ct. 2248, 2260 (1979); <u>People v. White</u>, 117 Ill.2d 194 at 223, 111 Ill. Dec. 288, 512 N.E.2d 677 (1987). The deterrent purpose of the exclusionary rule would be well served by suppression of statements that are unpurged of the primary taint created by a <u>McLaughlin</u> violation. Suppression would discourage police officers from parking an arrestee in a jail cell for more than (48) hours without good reason. It would deprive them of any benefit gained by their violation of the fourth amendment's guarantee that it will furnish meaningful protection from unfounded interference with liberty.

Having said that, we must now decide whether defendant's confession is sufficiently an act of free will to purge the primary taint of the unlawful invasion."

Willis, supra. The decision was made to hold Ahmad Simms past call even though he had been in custody since 5:30a.m. of the morning of December 2, 1999. No effort was made to comply with the requirements of 109-1(a), which clearly constitutes an Gerstein/McLaughlin violation. There is actually no statutory authority which exist in Illinois that even allows an arrested person to be taken to the police station, so that increases the necessity of complying with 109-1(a). The "persons arrested" statute at no time mentions a police station, and that statute is the sole authority in Illinois for persons arrested. Any evidence gathered at the  expense of this petitioner's fourth amendment protections must be suppressed out-right, as there is no other remedy at law for such an violation. People v. Nicholas, 286 Ill.Dec. 364, 813 N.E.2d 1057 (1st Dist. 2004). Thus, this petitioner maintains that, at present, his Fourth and Fifth Amendment rights  have been abrogated due to the clear violation of 725 ILCS 5/109-1(a) (West 1998).

VII.

**PETITIONER WAS DENIED HIS RIGHT TO CONFRONTATION WHERE THE COURT PRECLUDED DEFENSE COUNSEL FROM CROSS-EXAMINING RAYMOND ORANGE ABOUT HIS MOTIVE TO TESTIFY FALSELY. UNITED STATES CONSTITUTIONAL VIOLATION.**

In all criminal prosecutions, a defendant has the right "to be confronted with the witnesses against him". U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, sec.8. A "primary interest secured by the confrontation clause is the right of cross-examination". Douglas v. Alabama, 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed 934, 938 (1965). In the instant case, the trial court initially ruled that defense counsel could question Raymond Orange about what he hoped to gain in his own criminal case in exchange for testifying against petitioner; however, the trial court later precluded defense counsel from questioning Orange on this matter when he asked Orange a question in this matter. The court's limitation of cross-examination was improper and reversible error. Orange identified petitioner as being with the co-defendant in the victim's backyard shortly before the home invasion and murder. His testimony was important because it corroborated the State's other evidence and petitioner was denied the opportunity of fully examining Orange's testimony.

The exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. Davis v. Alaska, 415 U.S. 308, 316 17, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347, 354 (1974). The right to witness confrontation is satisfied only when counsel is permitted to expose to the jury facts from which jurors can draw inferences relating to the credibility of the witness.Id. at 318, 94 S.Ct. at 1111, 39 L.Ed.2d at 355.

The confrontation clause not only requires that a defendant be permitted to see his accusers testify, but more inportantly, that he also be allowed to subject them to cross-examination, which is the "greatest legal engine ever invented for the discovery of truth". Kirby v. United States, 174 US 47, 55 (1899).

32.

## CONCLUSION

Petitioner prays that this Honorable Court grant his petition for Habeas Corpus Relief Pursuant to 28 U.S.C. § 2241 & 2254.


/s/ _____

ATTACHED

AFFIDAVIT

STATE OF ILLINOIS
COUNTY OF RANDOLPH

### AFFIDAVIT OF AHMAD SIMMS

I, *Ahmad Simms*, after first being duly sworn upon oath, do state as follows:

1.    That I am the Defendant-Petitioner in the entitled cause of People v. Simms, No. 00 CR 1137.

2.    That as such, I, after being sworn upon my oath by virtue of this statement do state that, at no time did I volunteer to get a pen and paper to voluntarily write out a statement for the Chicago Police Department as is described in the attached Petition For Post Conviction Relief.

3.    That I was not given any Miranda warnings during the interrogation which involved the taking the of the written statement that is described in the attached Petition For Post Conviction Relief.

4.    That said written statement was taken, and then used as the format by which I was speak on camera at the behest of the Chicago Police Department, as is described in the attached Petition For Post Conviction Relief.

5.    That from the time I arrived to the Chicago Police Lock-up as is described in the attached Petition For Post Conviction Relief, to approx. 10:00 a.m, on the date described in the attached Petition For Post Conviction Relief, I was interrogated and physically abused so that the Officers could obtain a statement before I was placed before the video camera as is described in the attached Petition For Post Conviction Relief.

6.    That the Chicago Police Officers informed me that, they needed to have a written statement before I was placed before the camera, to allow them to know what I would say, and to make it easier for me to speak on camera.

7.    That at no time did any Chicago Police Officer's give me any Miranda Warnings during the written statement, since it was considered to be a rehearsal of what I was to say in front of the camera.

8.    That at no time did my trial counsel raise this fact before the court, despite the trialcourt finding the written statement and the surrounding circumstances to be unusual for a suspect.

9.    That at no time did my appellate counsel on direct appeal raise this issue concerning this affiant being questioned first before recording the same statement before a camera, without being given Miranda warnings on the written statement.

10.  That throughout my trial, my trial counsel argued before the jury and presented evidence that this affiant had not committed the crimes.

11.  That at no time did trial counsel advise this affiant that, this affiant must prove that affiant was not legally responsible for the acts of another.

12.  That during the closing arguments, the State argued that this affiant was accountable for the acts of another for the first time.

13.  That this argument was made after the evidence was closed and the defense had rested.

14.  That trial court for the defense did not make any argument which addressed this new theory on the part of the State.

15.  That the jury was then told by the judge to disregard any evidence that did not come from witnesses or exhibits during the trial.

16.  That the judge then told the jury that only evidence from the trial could be considered and not closing arguments.

17.  That the only opportunity this affiant had to address the new theory advanced by the state was in closing argument, but, the jury was instructed to disregard that.

18.  That the jury was then told the definition of first degree murder involved this affiant being legally responsible for the acts of another, which was never charged by the grand jury.

19.  That all throughout the trial, this affiant argued and presented evidence consistent with the definition of murder as contained in the indictment, which made no mention of legal responsibility for another's acts.

20.  That since the jury was given only a verdict form for first degree murder, but also given a different definition of first degree murder, the jury was made to believe that this affiant had failed to address the elements of proof for first degree murder, since the defense offered no evidence on that newly interjected theory.

21.  That since there was no verdict form on accountability given to the jury, the jury believed that legal responsibility and first degree murder were the same.

22.  That the jury believed that the grand jury had indicted this affiant for being legally responsible for the acts of another, and returned a verdict for first degree murder while believing that the two were the same, since there was only one verdict form, which was for first degree murder.

23. That this affiant had read the extent of what a jury instruction con-
ference involved, and at no time did the statute or Supreme Court Rule allow
for the State to use the instruction conference to change its theory of the
case.

24. That this affiant would not have allowed trial counsel to rest his de-
fense, had this affiant known that another theory would be interjected,
leaving this affiant with no opportunity to address that theory.

25. That Accountability has its own distinct elements, which must be proven
beyond a reasonable doubt, which constituted an amendment of the indictment
returned by the grand jury.

26. That appellate counsel was ineffective for failing to raise trial coun-
sel's ineffectiveness in not addressing the newly interjected theory in his
closing argument.

27. The the trial court denied to this affiant a fair and impartial trial,
when it instructed the jury to disregard this affiants closing argument as
not being evidence adduced at trial, while knowing that this affiant did
not become aware of the new theory until after the close of the evidence.

28. That the trial court denied to this affiant a fair and impartial trial,
when it gave the jury only one verdict form on first degree murder, while
simutaneously instructing the jury erroneously that the definition of first
degree murder involved legal responsibility for another, leaving the jury
to believe that they were the same.

29. That the trial court denied to this affiant a fair and impartial trial,
in failing to instruct the jury that, legal responsibility was not contained
in the indictment, and that affiant was not failing in his burden by defend-
ing against the sole allegations of the indictment, as opposed to the (11th)
hour newly interjected theory of the state.

30. That by the court instructing on accountability, allowing the state
to argue extensively on accountability, and giving same instructions to be
taken to the jury room, while instructing the jury to disregard closing argu-
ments that were not based on the trial's evidence, effectively precluded
the jury from considering this affiants sole opportunity to address the state's
new theory, and gave credence to the State's arguments over affiants.

31. That the statements contained in this statement are to be taken as true
and liberally construed.

32. That these statements are verified and true and correct.

33.  That this affiant is an adult, and competent to testify as to the substance of this instant Verified Statement in any court within the State Of Illinois.

34.  That further this affiant sayeths not.

I, _Ahmad Simms_____, so aver and declare that I make this verified statement under the penalty of perjury. That the contents of this statement are true and correct in both substance and fact, to the best of my knowledge and experiences, as is evidenced by my true and correct signature as is hereby affixed below. Such being made pursuant to 735 ILCS 1-109.


                                   SO AVERRED AND VERIFIED:

                                   BY:/S/ _Ahmad Simms_____
                                          Ahmad Simms - Affiant

SUBSCRIBED TO AND BEFORE ME
THIS  30   DAY OF June, 2005.
_____Timothy Sapp_____
    N O T A R Y


          "OFFICIAL SEAL"
          TIMOTHY D. SAPP
     NOTARY PUBLIC, STATE OF ILLINOIS
     MY COMMISSION EXPIRES 6/19/2007